## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 302 | **DATE** | 8/15/2001 |
| **CASE TITLE** | Pagsuberon vs. Chicago Tribune Co. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order granting defendant's motion for summary judgment. Judgment is therefore entered in favor of defendant and against plaintiff. Any pending motion in this case is terminated as moot. All schedules including pretrial conference set for 9/21/01 and trial set for 10/9/01 are also vacated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 16 2001 | |
| | Notified counsel by telephone. | | date docketed | 31 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 8/15/2001 | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 AUG 15 PM 5:59 | date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NOEL PAGSUBERON, )
)
      Plaintiff, )
)
v. ) No. 00 C 0302
)
CHICAGO TRIBUNE COMPANY, )
)
      Defendant. )

AUG 1 6 2001

## MEMORANDUM OPINION AND ORDER

Noel Pagsuberon sues the Chicago Tribune Co. ("Tribune") for employment discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2 et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. He says that the Tribune discriminated against him on the basis of his age and national origin when it passed him over for a promotion in favor of a younger, non-Filipino co-worker. The Tribune moves for summary judgment, which I grant.

I.

In the early 1990s, Noel Pagsuberon, a Filipino, worked in the Tribune's Production Systems Services ("PSS") department as an Associate Ad Creator. He had worked at the Tribune in various positions since 1985. Associate Ad Creators prepare text for use in ad layout material; they input text, scan, proofread, and sort ads. In February 1995, Pagsuberon, then sixty-one years old, applied internally for a promotion to a vacant Ad Creator position.

Ad Creators take art that has been scanned and text that has been entered by someone else and create the final product according to the specifications of the advertiser. Ad Creators must have the skills of an Associate Ad Creator -- text entry, scanning and proofreading -- but they do not ordinarily perform these tasks themselves. They must also have a thorough understanding of advertisement layout and design and be able to use highly technical computer equipment. The Tribune planned to train the new Ad Creator on specific technical equipment and other job skills after his or her promotion.

Two other Tribune employees also applied for the Ad Creator position: Geneva Cole, a forty-year-old African American woman, and Freddie Dixon, a thirty-year-old African American man. The Tribune's Internal Placement Program procedures require an employee to submit an application for an open position through his or her supervisor. The supervisor completes the Supervisor Section of the application form, which includes a statement of attendance or discipline problems, date of last performance review and overall rating, recommendation for the position, and comments. Clifford Phillips filled out the Supervisor Section for Dixon and Cole, and Tom Symonanis filled out the Supervisor Section for Pagsuberon. Phillips and Lenny Krasnowski, another PSS supervisor, reported to Symonanis, who managed the PSS department. Phillips and Krasnowski interviewed all three candidates in April 1995 and rated them on a

scale of one to ten in eight different skills or categories. Dixon had the highest total score, with 73 points out of a possible 80, followed by Pagsuberon with 59 and Cole with 58. On April 12, 1995, Phillips and Krasnowski wrote a memorandum to Symonanis listing the applicants' scores and recommending Dixon for the promotion. Symonanis is listed as the Hiring Manager on the Employment Office form that indicates the open position was ultimately filled by Dixon. At this time the Tribune employed six other employees over the age of sixty as Ad Creators in the PSS department. One week before Dixon's promotion was effective, Symonanis promoted a Filipino employee in another department under his control, and in 1996 he promoted a Filipino PSS employee from Ad Creator to Senior Ad Creator. Pagsuberon continued to work at the Tribune until he suffered a stroke in 1997 and left work on disability; he retired from the Tribune on February 8, 1999. Pagsuberon filed a Charge of Discrimination with the Equal Employment Opportunity Commission on June 12, 1995 and received a Right to Sue letter on November 9, 1999. He filed this lawsuit on January 18, 2000.

II.

Summary judgment is proper when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact

exists, I must construe all facts in the light most favorable to the non-moving parties and draw all reasonable and justifiable inferences in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "A genuine issue of fact 'exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole.'" *Culver v. McRoberts*, 192 F.3d 1095, 1098 (7th Cir. 1999) (citation omitted).

If there is no direct evidence of discrimination, as there is not here, a plaintiff may proceed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[1] Under *McDonnell Douglas*, a plaintiff must first make out a prima facie case of discrimination by showing that: "(1) he belongs to a protected class, (2) he performed his job according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated more favorably by the defendant." *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 886 (7th Cir. 2001). If the plaintiff establishes the prima facie case, the burden shifts to the employer to come forward with evidence of a legitimate, non-discriminatory reason for the challenged action. *Id.* If the defendant does so, the burden shifts back to the

---

[1] Although originally formulated for discrimination claims under Title VII, the Supreme Court has used this method for claims under the ADEA. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

plaintiff to come forward with evidence to show that the employer's stated reason is a pretext for discrimination. *Id.*

"Pretext" means more than an unusual act or a bad business decision; it is a lie or "deceit used to cover one's tracks." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.2d 681, 684, 685 (7th Cir. 2000). In considering whether an employer's stated reason is pretextual, I "bear in mind that the overall correctness or desirability of the reasons proffered is not relevant." *Baron v. City of Highland Park*, 195 F.3d 333, 341 (7th Cir. 1999). The underlying truth of the reasons is not the issue, only the employer's honest belief in them. To demonstrate pretext, "the employee must give evidence 'tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the [action] in question, or were insufficient to motivate the [action.]'" *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 395 (7th Cir. 1998) (citation omitted). The plaintiff's evidence must tend to show that the employer did not honestly believe the reasons it offered. *Bell v. Environmental Protection Agency*, 232 F.3d 546, 550 (7th Cir. 2000). Where the employer comes forward with more than one legitimate reason that, standing alone, could justify the employment action, the plaintiff must create an issue of fact for each reason to survive a motion for summary judgment. *Adreani*, 154 F.3d at 395; *Russell v. Acme-Evans Co.*, 51 F.3d 64, 69 (7th Cir. 1995).

This case turns on pretext. In its motion for summary judgment, the Tribune says that Symonanis hired Dixon because he was most qualified for the position on the basis of his eagerness and ability to learn new computer systems and his scanning proficiency, as well as the ratings and recommendations of Phillips and Krasnowski. These reasons are supported by the testimony of all three decisionmakers, as well as contemporaneous documents. Pagsuberon argues that Symonanis was not the decisionmaker and that, even if he was, the Tribune should not be allowed to offer evidence of his reasons for not promoting Pagsuberon because it did not offer them in Cole's case against the Tribune.[2] *See Cole v. Chicago Tribune Co.*, No. 96 C 3320, 2000 WL 656644 (N.D. Ill. May 23, 2000) (Gottschall, J.) (granting summary judgment for Tribune). Although he does not develop the argument or identify its legal basis, I understand this to be an invocation of judicial estoppel.

Judicial estoppel "generally prevents a party from prevailing in one [proceeding] on an argument and then relying on a contradictory argument to prevail in another [proceeding]." *New Hampshire v. Maine*, 121 S.Ct. 1808, 1814 (2001) (citation omitted).

---

[2] Symonanis is listed as the Hiring Manager on the form memorializing Dixon's promotion. Pagsuberon does not dispute that Phillips and Krasnowski submitted the evaluation scores to Symonanis, but he says that Symonanis was not the decisionmaker because he was not mentioned in the *Cole* case (an objection I deal with separately) and because he simply "rubber-stamped" the decision of Phillips and Krasnowski. Even if Symonanis merely approved the recommendation of others, Pagsuberon does not dispute that Symonanis made the ultimate decision to promote Dixon.

Although there is no fixed test for judicial estoppel, courts typically require that the party's position be "clearly inconsistent" with its earlier position, and that the party have persuaded the court in the earlier proceeding to accept the inconsistent opinion. *Id.* at 1815. I may also consider whether the party asserting the challenged position would derive an unfair advantage or benefit over the complaining party. *Id.*

In the *Cole* case, the Tribune asserted that Phillips and Krasnowski "determined that Dixon was the best candidate for the position and selected him for the job." Pl's Ex. 32B at ¶ 24. Pagsuberon now says that the Tribune never mentioned Symonanis in the *Cole* case and that there it said only that Dixon was more qualified because he received higher ratings. He argues that the Tribune should not be allowed to assert any other decisionmakers or non-discriminatory reasons. It is not inconsistent with the *Cole* case to say that Symonanis *and* Phillips and Krasnowksi were the decisionmakers; one proposition does not logically exclude the other. *See Himel v. Continental Ill. Nat'l Bank & Trust Co. of Chi.*, 596 F.2d 205, 211 (7th Cir. 1979). Nor is it "contradictory" to provide additional explanations for why the Tribune considered Dixon to be more qualified. Two propositions are not "inherently inconsistent" merely because they "are not explicitly duplicative." *See Hossaini v. Western Mo. Med. Ctr.*, 140 F.3d 1140, 1143 (8th Cir. 1998).

Moreover, even if the Tribune were limited to its decisionmakers and reasons asserted in the *Cole* case, Pagsuberon has not come forward with sufficient evidence to raise an inference of pretext.³ Phillips and Krasnowski rated the applicants on eight criteria, and Dixon received the highest score. Pagsuberon attempts to demonstrate pretext by showing that the score for each criterion is "factually baseless." Although it is not enough that the employer merely was wrong, the Seventh Circuit has endorsed the "comparative qualification" approach where the plaintiff was able to come forward with "specific evidence that calls into question the veracity of the [employer]'s reason for failing to promote [him]: that [he] was not as qualified as the other candidates." *Perdomo v. Browner*, 67 F.3d 140, 146 (7th Cir. 1995). In *Perdomo*, the court held that, where it was "quite evident that [the

---

³ I note here that the Tribune produces evidence that it employed other Ad Creators over the age of 60 at the time of Dixon's promotion, and that Symonanis promoted other Filipino employees at the same time as and after Dixon's promotion. Pagsuberon correctly points out for the other Ad Creators that there is no evidence who the decisionmakers were or when they were hired, and that the promotion of another Filipino employee a year and a half after Dixon's promotion is no evidence of Symonanis' state of mind in 1995. However, the promotion of a Filipino employee by Symonanis one week before Dixon's promotion, although in another department, is evidence against discriminatory animus. Although neither party raises the issue of discriminatory animus here, it is one on which Pagsuberon bears the burden of proof at trial. *See Reeves*, 530 U.S. at 146-47. Drawing all inferences in favor of Pagsuberon, I do not give this evidence much weight, but it is evidence with which Pagsuberon would have to contend at trial if he attempted to rely solely on pretext for the inference of discriminatory animus.

-8-

plaintiff's] qualifications not only match[ed] those of the successful appointees but may very well [have] exceed[ed]" them, a jury could reasonably conclude that the employer was lying when it said the plaintiff did not get the promotion because she was less qualified. *Id.*; *see also Gordon*, 246 F.3d at 889 (Employee may demonstrate pretext with "detailed refutation" of events underlying performance assessment.); *Bell*, 232 F.3d at 551 (Employee demonstrated pretext by attacking "comparative qualifications.").

Pagsuberon comes forward with evidence for each of the eight criteria, and for some of them the evidence is sufficient to create a question of fact as to the Tribune's honest belief. For example, for (2) "Evaluation (Based on past work performance)," Dixon received a score of ten and both Pagsuberon and Cole received only sixes. Pagsuberon produced the six-month performance reviews for May to November 1993, Pl's Ex. 27A-C, and the annual performance reviews for 1993 to 1994, in which all three candidates received overall evaluations of "fully satisfactory" -- the middle of the range from exceptional to unsatisfactory. A jury could conclude that the Tribune did not really believe that Dixon was entitled to a perfect score on this criterion.[4]

---

[4] Pagsuberon scored higher on (4) ability to work with minimum supervision, so there was no need to refute that criterion. Pagsuberon comes forward with evidence that may be sufficient to raise doubts about the honesty of the Tribune's assessments on the remaining criteria: (1) "Job knowledge (Mechanicals of the newspaper) columns measures, sizes and sections"; (5) Adherence to Policies and procedures, including attendance and standards of

However, for at least three criteria, Pagsuberon's evidence falls short. For (3) "Ability to do new job *[sic] After proper training," he says that he had already demonstrated that he could perform the Ad Creator's job, and he cites to affidavits of two co-workers, neither of whom was a decisionmaker in this case. The opinions of co-workers that an employee was more qualified are insufficient to create a question of fact if they shed no light on the belief of the decisionmaker in the truth of its reasons. *See Johnson v. City of Fort Wayne*, 91 F.3d 922, 936 (7th Cir. 1996); *see also Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125 (7th Cir. 1994). One co-worker, however, said that Pagsuberon knew how to set ads and Krasnowski was aware of it because the co-worker had discussed it with him. Pl's Ex. 22B. That is sufficient to create a question of fact about the Tribune's knowledge of Pagsuberon's ability to set ads (indeed, this appears in Krasnowki's interview notes, *infra*), but it does not demonstrate that the Tribune believed that Pagsuberon was *more* able than Dixon. Phillips' testimony that he believed all three candidates had the ability to do the job, Pl's Ex. 13 at 77, likewise does not suggest

---

conduct, and "PSS forms (production sheets)"; and (6) average performance rating in input, scanning and proofreading. I need not decide whether the evidence is actually sufficient because I find that he has failed to rebut other legitimate, non-discriminatory reasons why the Tribune promoted Dixon. *See Adreani*, 154 F.3d at 395 ("[T]he employee must examine each reason given by the employer and must raise an issue of fact regarding the honesty and credibility of each of the reasons.").

that Phillips and Krasnowski were lying when they concluded that Dixon was *more* able.

Pagsuberon alleges that the Tribune violated its own internal procedures by basing its evaluation for this criterion on a prediction of future performance rather than current or past ability. Factually, the record does not support this: the admonition that evaluation should be based on skills and abilities actually demonstrated and not on predictions of future performance applies to the "Supervisor Section" of the employee's application, not to every part of the hiring process. *See* Pl's Ex. 2 at 3. Even if a prediction of ability to do the new job were against the Tribune's policy, Pagsuberon has not shown that it was violated only as to him. *See, e.g., Gordon*, 246 F.3d at 892 (evidence that employer's rules were applied unequally was evidence of pretext). It may be that future predictions are a poor proxy for qualification, but an employee must do more than suggest that the process "was not well run" to raise an inference of pretext. *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 678 (7th Cir. 1997) ("'No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers,' the laws barring discrimination do not interfere.") (citations omitted).

Pagsuberon objects that the rating on (7) "Interview questions" is subjective, Phillips and Krasnowski remember little

-11-

from the interviews, and the standards were low. None of these objections casts any doubt on the scores themselves, which show that Dixon outperformed Pagsuberon ten to seven. Pagsuberon says that Krasnowski's interview notes are "revealing" of the low standards employed because they said of Dixon that he "hasn't had problems with policy and procedure," "has been in typesetting long enough to take on position," and was "considering going back to school." They also said that he "has experience with many systems at Tribune -- flexible," and "[s]ince DCAM [unspecified event] has taken on more responsibility and shown improvement in all areas." The notes from Pagsuberon's interview are equally telling. Krasnowski wrote that Pagsuberon "understands the system -- has already typeset ads" and "[s]ince applying for position has increased productivity numbers -- now performs all associate duties without being asked," but he also wrote down two questions: "[w]here was this job performance before applying for position?" and "ambitious enough to take on new responsibilities?" Rather than casting doubt on the scores for interview questions, the interview notes emphasize why Phillips and Krasnowski believed Dixon to be the more qualified candidate.

Pagsuberon also notes that he had been in the typesetting environment more than twice as long as Dixon, and he had already been to college. There is nothing in the record to suggest that either seniority or education level were factors that the Tribune

considered in filling the Ad Creator position; for example, there is no union contract that guarantees priority in job opportunities based on seniority. Although the Seventh Circuit considered length of service with the employer as a factor in two "comparative qualifications" cases, both are distinguishable.

In *Perdomo v. Browner*, 67 F.3d 140 (7th Cir. 1995), the court considered the plaintiff's length of service with the employer (the plaintiff had less experience as an attorney, but had been with the employer for longer), but there the plaintiff had scored *higher* on an appraisal evaluation than either of the two successful candidates, had received four bronze medals (the employer's highest award), and her supervisor, who actively pushed for her promotion, believed she was the most qualified for the job. *Id.* at 146. In *Bell v. Environmental Protection Agency*, 232 F.3d 546 (7th Cir. 2000), four unsuccessful candidates sued and the court held that they met their burden on pretext by showing that all four had been employed at the EPA longer than the selectees, several of the plaintiffs had received more service awards than the selectees, and two of the candidates received perfect scores on preliminary candidate rankings (higher than two of the four selectees) and one of the plaintiff's scores was equal to two of the selectees. *Id.* at 551. Moreover, the plaintiffs produced a memorandum to the members of the selection panel in which one of the decisionmakers expressed a belief that several of the plaintiffs were superior

candidates. *Id.* at 551-52. *But see Wade v. Lerner New York, Inc.*, 243 F.3d 319, 324 (7th Cir. 2001) (Plaintiff's allegation that employer failed to account for many years of experience in decision not to promote was insufficient to demonstrate pretext where there was no indication that employer considered length of service as a standard.). Here, Pagsuberon has produced evidence of his years with the Tribune and in the typesetting field and two attendance awards, but he does not come forward with evidence that anyone in a position to influence the decisionmakers thought he was the better candidate. Indeed, Symonanis did not recommend him for the promotion, but Phillips recommended Dixon. Nor does he demonstrate that his scores on the evaluation by Phillips and Krasnowski were *better* than Dixon's, only that their scores on prior evaluations were the same.

Pagsuberon contests the ratings on (8) "Deserving of Promotion based on the combination above," because he received a score of seven and Cole was rated an eight, though Krasnowski said in his deposition that he believed Pagsuberon deserved the promotion more than Cole, and Krasnowski said he did not know why Cole received a higher score because she had scored lower than Pagsuberon in every other category. Perhaps it was a mistake of transcription, or perhaps Phillips and Krasnowski were careless in assigning this score, but a showing of pretext requires more than a mistake, oddity or business error. *See Clay v. Holy Cross Hosp.*, 253 F.3d

1000, 1005 (7th Cir. 2001). Even if Pagsuberon's score does not make sense in comparison to Cole's, he does not come forward with any evidence to suggest that his score of seven versus Dixon's score of ten was fishy. Although Pagsuberon may be able to cast doubt on some of the ratings, he has not shown that the predictions of job performance, interviews, and overall assessments, standing alone, were not a sufficient reason for giving the promotion to Dixon. *See, e.g., Glab v. California State Bd. of Equalization*, 151 F.3d 1032, No. 97-3965, 1998 WL 516761, at *3 (7th Cir. July 28, 1998) (unpublished order) (superior response to interview questions was legitimate non-discriminatory reason).

As for the additional reasons offered by Symonanis, that Dixon was eager and able to learn new computer systems and that he was highly proficient at scanning, Pagsuberon has failed to raise an inference of pretext. The affidavits of his co-workers are the only evidence he offers that Dixon lacked initiative; but such evidence is insufficient if it does not tend to show that any alleged lack of initiative on Dixon's part was known to the decisionmakers. *See Johnson*, 91 F.3d at 936; *Anderson*, 13 F.3d at 1125. Dixon's most recent six-month and annual evaluations list as strengths his desire to learn new equipment, and that he takes initiative on new equipment when available. Pl's Ex. 27B, 28B. Pagsuberon's 1993 six-month review said that he took initiative on some software programs, but his prior review said that he needed to

show more initiative to learn new skills, and Krasnowski's interview notes questioned whether he was ambitious enough to take on new responsibilities. Krasnowski also said in his deposition that Dixon and Pagsuberon were fairly even as candidates, and that the difference was that Pagsuberon was not proactive or vocal enough about his desire for the job. Pagsuberon suggests that I should not "abandon good reason and common sense," Gordon, 246 F.3d at 889, but even viewing the evidence in the light most favorable to him, if two candidates are similarly qualified, it does not defy reason or common sense to decide not to promote someone who does not actively and vocally seek the job.

Symonanis said that Dixon was highly qualified at scanning, and Phillips said that Pagsuberon did not scan as much as he could have. Pagsuberon responds by saying that the amount of scanning he did was up to his supervisors. Even if it was not his fault that he did not scan, however, this raises no inference that the reason is untrue or inadequate; employees are often selected or passed over for reasons beyond their control that are nevertheless legitimate. He also says that Ad Creators did not perform scanning themselves, but he admits that Ad Creators were required to have the skills of an Associate Ad Creator, which include scanning, and he does not dispute Dixon's scanning proficiency. He presents the affidavits of his co-workers to show his own skill at scanning and to suggest that scanning is less complex than inputting, at which

he was superior to Dixon.  However, neither co-worker says that Pagsuberon was a *better* scanner than, only that he performed the task more quickly, and co-worker affidavits attesting to an employee's qualifications are anyhow insufficient.  Because Pagsuberon has failed to create a question of fact as to the Tribune's honesty for all of the legitimate, non-discriminatory reasons offered for denying him the promotion to Ad Creator, I GRANT the Tribune's motion for summary judgment.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: August 15, 2001