Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 302 | **DATE** | 10/5/2001 |
| **CASE TITLE** | Pagsuberon vs. Chicago Tribune Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order denying plaintiff's motion to reconsider (33-1) this court's order granting defendant's motion for summary judgment.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 09 2001 date docketed | 40 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 10/5/2001 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| MPJ | courtroom deputy's initials | 01 OCT -5 PM 6:10 | MPJ mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

NOEL PAGSUBERON, )
)
Plaintiff, )
) No. 00 C 0302
v. )
)
CHICAGO TRIBUNE COMPANY, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Noel Pagsuberon sued the Chicago Tribune Co. ("Tribune") for discrimination on the basis of age and national origin. I granted summary judgment for the Tribune on August 15, 2001. Pagsuberon moves for reconsideration pursuant to Fed. R. Civ. P. 59(e). A motion to reconsider under Rule 59(e) allows a party to direct my attention to a manifest error of law or fact or newly discovered evidence, but it does not provide an opportunity to "introduce new evidence or advance arguments that could and should have been presented . . . prior to the judgment." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). The facts of this case are set out at 155 F. Supp. 2d 959, 962-63 (N.D. Ill. 2001), so I do not repeat them here.

Pagsuberon argues that I made two errors on summary judgment: (1) that I applied an erroneous legal standard in considering his challenge to the evaluation form prepared by his supervisors, Lenny Krasnowski and Clifford Phillips; and (2) that I failed to view the facts in the light most favorable to him when I concluded that Tom

Symonanis was a decisionmaker, and when I considered whether he had created a question of fact as to Symonanis' reasons for not promoting Pagsuberon.

Pagsuberon argues that I should not have required him to rebut each of the eight criteria on which Phillips and Krasnowksi relied in reaching their recommendation because the Tribune relied on the rating form as a whole to conclude that Dixon was more qualified, not each criterion in isolation. He argues that the Tribune's "reliance on the form does not constitute seven separate reasons for not promoting [Pagsuberon]; it constitutes one," and that by casting doubt on the sincerity of some of the criteria, he has cast doubt on the whole form. This is a complex argument, but it fails nevertheless.

When an employer offers multiple explanations for its employment action, the plaintiff must rebut *each* reason. *See Wilson v. AM Gen. Corp.*, 167 F.3d 1114, 1120 (7th Cir. 1999); *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 395 (7th Cir. 1998); *Brill v. Lante Corp.*, 119 F.3d 1266, 1270 (7th Cir. 1997); *Wolf v. Buss (Am.) Inc.*, 77 F.3d 914, 920 (7th Cir. 1996); *Russell v. Acme-Evans Co.*, 51 F.3d 64, 69 (7th Cir. 1995). However, "[t]here may be cases in which the multiple grounds offered by the defendant . . . are so intertwined, or the pretextual character of one of them so fishy and suspicious, that the plaintiff could withstand summary judgment." *Russell*, 51 F.3d at 70.

Pagsuberon argues that, by casting doubt on the Tribune's sincerity for some of the criteria on the evaluation form, he has sufficiently cast doubt on the whole form. But this characterization (of the many reasons aggregated in the form as one reason) would allow an end-run around the general rule that a plaintiff must rebut *each* reason in any case where the defendant supported a general reason (e.g., "he was less qualified") with more specific evidence. The essence of the pretext analysis is that discriminatory animus may be inferred from an employer's false or dishonest explanation for an adverse employment action. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 517 (1993). But that must be squared with the rule in the Seventh Circuit that, even where the plaintiff can create a question of fact as to the truth or sincerity of some of the employer's reasons, an employer is entitled to summary judgment if at least one legitimate and sufficient reason remains unrebutted. *See Russell*, 51 F.3d at 69.

> Now it might seem that as soon as one reason for an allegedly discriminatory action is found to be a pretext (or rather must be *assumed* for purposes of summary judgment to be a pretext, because the plaintiff has succeeded in putting the matter in doubt), the company's honesty is so far drawn in question, and the plausibility of supposing that the action was not based on an invidious motive is so weakened, that the defendant cannot possibly stave off a trial. But this is true only if the company has offered no other reason that, *if that reason stood alone* (more precisely if it did not have support from the tainted reason), would have caused the company to take the action of which the plaintiff is complaining.

*Id.* (emphases in original). Here Pagsuberon could not create a question of fact as to the honesty of Phillips' and Krasnowski's

determination that Dixon's answers to the interview questions were more impressive, see *Baron v. City of Highland Park*, 195 F.3d 333, 341 (7th Cir. 1999); *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 515 (7th Cir. 1996), or their prediction that Dixon would perform better after training than Pagsuberon. Because those reasons standing alone would be sufficient, Pagsuberon's only recourse was to demonstrate that the reasons on the evaluation form were so intertwined, or that one was so fishy, that it cast doubt on the sincerity of the whole process.

Pagsuberon argues that I erred by not crediting his argument that the selection process was a "sham" because the Tribune had decided not to promote him before the selection process was completed, and therefore that none of the reasons given in the evaluation forms cannot be trusted. However, his evidence, even viewed favorably, does not bear that out. He gives four reasons why Phillips' initial recommendation not to promote him casts doubt on the whole process: (1) Phillips said in his deposition that Pagsuberon and Dixon were "neck & neck" for the promotion; (2) Dixon and Cole had not applied yet; (3) none of the candidates had been interviewed; and (4) the supervisors had not rated the candidates yet. The Tribune's policy and procedure for internal promotions required the supervisors to make initial recommendations, see Pl's Ex. 2 at D0300, and the policy was applied equally to all candidates, see Pl's Ex. 18A-D. No inference

4

of "fishiness" can be drawn from the procedure of making initial recommendations before all the evidence was in or before all the candidates had applied. A plaintiff cannot withstand summary judgment just by criticizing the evaluation policy or process, especially where the policy was applied to all the candidates equally. *See Gordon v. United Airlines, Inc.*, 246 F.3d 878, 892 (7th Cir. 2001); *Kariotis v. Navistar Int'l Transp. Co.*, 131 F.3d 672, 678 (7th Cir. 1997).

Pagsuberon asks me to draw the inference that Phillips was lying at his deposition when he said that Pagsuberon and Dixon were "neck and neck" because he did not initially recommend Pagsuberon for the promotion. Pagsuberon takes the "neck and neck" statement out of context: Phillips did not testify that Pagsuberon were "neck and neck" *for the promotion*, only that if Phillips, post hoc, had to rank the "top associate" ad creator in the department in 1995 in terms of performance appraisals, Pagsuberon and Dixon were "neck and neck" and higher than the rest. Pl's Ex. 13 at 175-76. Standing alone, Phillips' statement might support an inference that Phillips believed that Pagsuberon and Dixon were neck and neck for the promotion based on performance appraisals, (and I held, for other reasons, that he had created a question of fact as to this criteria, *see* 155 F. Supp. 2d at 966) but in context it does not support an inference that he was lying about *all* of the reasons that Pagsuberon didn't get the job. *See Outlaw v. Newkirk*, 259

F.3d 833, 837 (7th Cir. 2001) (noting that summary judgment is warranted "where *the record taken as a whole* could not lead a rational trier of fact to find for the non-moving party" (emphasis added)). As further evidence that the whole process was a sham, Pagsuberon points to the question about probation in the supervisor's section of his application. Phillips marked through both the "yes" and "no" boxes, but scratched both out and wrote in the comment section that "this employee [Pagsuberon] has not had any problems." Pl's Ex. 18A. No reasonable jury could infer from that evidence that the whole selection process was a sham.

Pagsuberon also argues that I erred in crediting the additional reasons given by Symonanis. Pagsuberon argues that he "cast doubt" on the sincerity of these reasons by showing that the Tribune "changed the identity of the decisionmakers late in the litigation." Mot. at 6. In his reply, he states four reasons why the Tribune's designation of Symonanis as a decisionmaker was "suspicious": (1) Phillips testified that he and Krasnowski alone made the decision to promote Dixon; (2) the Tribune did not claim that Symonanis played a role in decisionmaking when providing the EEOC with information regarding Pagsuberon's charge; (3) the Tribune did not mention Symonanis or claim that he was a decisionmaker in the *Cole* case (brought by the other unsuccessful candidate, Geneva Cole); and (4) Symonanis admitted that Phillips and Krasnowski had much more personal knowledge about the

6

candidates than he did. I rejected the third argument on summary judgment, and Pagsuberon comes forward with no reason why I should reconsider that holding here. Likewise, where a defendant supplements the explanations it gave in the context of the EEOC investigation, but does not contradict or retract them, no inference of pretext may be drawn. *See Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733-34 (7th Cir. 2001); *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373-74 (7th Cir. 1992).

Pagsuberon argues that I did not resolve inferences from contradictory evidence in his favor and by finding that Pagsuberon did not dispute that Symonanis made the promotion decision. The evidence that Pagsuberon asks me to credit is "Phillips' testimony that he and Krasnowski alone made the promotion decision." Mot. at 7. He argues that this contradicted Symonanis' testimony that he was the decisionmaker, and that I improperly resolved a credibility issue. However, Pagsuberon takes the statement out of context. Phillips' testimony was as follows:

    Q: And who participated in the selection process for the promotion?
    A: Lenny Krasnowksi and myself.
    Q: To your knowledge, was anyone else involved in the selection process other than yourself and Lenny Krasnowksi?
    A: No.
    Q: Who made the final decision on who to select?
    A: Tom Symonanis might have said okay or said he felt comfortable with our decision.
    Q: *To your knowledge, did anyone else make the final decision other than Tom?*
    A: No.

Pl's Ex. 13 at 54-55 (emphasis added). Pagsuberon omitted the final question and answer. Reading the entire context of the statement, the testimony does not contradict Symonanis' testimony that he made the final hiring decision, even if he relied on input from Phillips and Krasnowski. That Pagsuberon disagreed with this interpretation of the evidence does not constitute a dispute of material fact. *See Taylor v. Monsanto Co.*, 150 F.3d 806, 810 (7th Cir. 1998) (Where plaintiff's "interpretation of the [evidence was] misleadingly selective," court declined to find that plaintiff had created question of material fact).

Finally, Pagsuberon argues that I failed to credit evidence that Symonanis had less personal knowledge about the candidates than Phillips and Krasnowski. Symonanis' testimony was that he was not always on the floor, so he did not have personal knowledge of Pagsuberon's efforts to receive training on new computer programs. Pl's Ex. 15 at 70. Although this evidence appeared in Pagsuberon's response to the Tribune's statement of material facts, ¶ 37, Pagsuberon did not refer to it in his brief. Nevertheless, a decisionmaker is a person involved in the challenged decision, with the authority to make or influence the final decision, not necessarily the person with the most personal knowledge. *See Wallace v. SMC Pneumatics, Inc.*, 103 F. 3d 1394, 1400 (7th Cir. 1997) (Decisionmaker is one "who has formal authority over the plaintiff's job."); *see also Chambers v. Walt Disney World Co.*, 132

F. Supp. 2d 1356, 1364 (M.D. Fla. 2001).

Pagsuberon identifies an erroneous factual finding in my opinion: I said that Symonanis rather than Phillips, had completed the supervisor section of Pagsuberon's application. 155 F. Supp. 2d at 963, 968. In fact, Symonanis completed that section of Pagsuberon's 1992 application, but Phillips completed it on the 1995 application that is the subject of this lawsuit. See Pl's Ex. 18A, 19. I here correct this error, but it does not affect the determination that Symonanis was a decisionmaker, or that no one in a position to influence the decisionmakers thought Pagsuberon was the better candidate. 155 F. Supp. 2d at 968. Phillips and Krasnowski directed their memorandum about the candidates' qualifications to Symonanis, and Symonanis was listed as the Hiring Manager on the form memorializing Dixon's promotion. 155 F. Supp. 2d at 964 n.2. Pagsuberon alleges that Symonanis "played a minor role, if any, in the promotion decision," Mot. at 8, but he did not come forward with evidence to dispute that Symonanis made the final decision, regardless of whether he was the best equipped to decide. Even if Symonanis relied only on information from Phillips and Krasnowski, see Shager v. Upjohn Co., 913 F.2d 398, 405 (7th Cir. 1990) (Employer may not escape liability if decisionmaker relied on recommendations by subordinates who improperly discriminated on the basis of age.), Pagsuberon failed to demonstrate that their reasons were pretextual.

As to Symonanis' reasons, Pagsuberon makes no new arguments, but claims that I ignored evidence of Dixon's conduct deficiencies. None of that evidence, or evidence that Pagsuberon had demonstrated his ambition by applying for positions in the past, reflected on Symonanis's reasons: that he believed Dixon was eager and able to learn new computer programs and that he was a better scanner. On the question of eagerness, Pagsuberon points to evidence of Dixon's alleged "conduct deficiencies" and evidence that his work was "full of errors." Mot. at 8. Even accepting that evidence as true, the evidence does not bear on Dixon's eagerness and ability to learn. Pagsuberon points out that Phillips and Krasnowksi considered inputting or typing to be more important than scanning, and says that I failed to consider this when I credited Symonanis' explanation. Although this evidence does appear in the record, see Pl's Ex. 13 at 53, Pagsuberon did not present it in his response memorandum,[1] so the argument was waived. See Doe v. Cunningham, 30 F.3d 879, 885 (7th Cir. 1994) ("A district court need not scour the record to determine whether there exists a genuine issue of material fact to preclude summary judgment."). Even if I were to

---

[1] Pagsuberon says that he produced evidence that "the most important criterion on the evaluation form was 'average rating in inputting, scanning, and quality check,' and that of the three skills listed, Phillips and Krasnowski believed that inputting was the most important," and he cites to page seven of his memorandum on summary judgment. However, there he only argued that the "average rating" criterion was the most important of the eight criteria, not that inputting was a more important skill than scanning.

10

credit that evidence now, it does not entitle Pagsuberon to a denial of summary judgment because he has failed to rebut the other reasons offered by the Tribune.

Finally, Pagsuberon claims that I made erroneous factual findings about the evidence relating to an absence of discriminatory animus. *See* 155 F. Supp. 2d. at 965 n.3. He does not identify what the factual errors were, only that I should not have credited the evidence. As I stated, however, because there is no positive evidence of discriminatory animus, the case turned on pretext. *Id.* at 963, 964. I did not rely on the evidence in note three in concluding that Pagsuberon had failed to create a dispute of material fact on the question of pretext. The motion to reconsider is DENIED.

ENTER ORDER: *[signature]*
Elaine E. Bucklo
United States District Judge

Dated: October 5, 2001